UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| PNC EQUIPMENT FINANCE, LLC, <br><br> Plaintiff, <br><br> v. <br><br> HARRY CARR, <br><br> Defendant. | Case No. 19-mc-80013-VKD <br><br> **ORDER FOR REASSIGNMENT TO A DISTRICT JUDGE** <br><br> **REPORT AND RECOMMENDATION RE MOTION FOR ASSIGNMENT ORDER AND RESTRAINING ORDER** <br><br> Re: Dkt. No. 27 |

Judgment creditor PNC Equipment Finance, LLC ("PNC") now moves for an order directing judgment debtor Harry Carr to (1) assign to PNC his right to any distributions, dividends, and payments arising from his purchase of stock from Vcinity Holdings, Inc. on May 22, 2020, and (2) restrain Mr. Carr from transferring his right to payment to a third party, or from otherwise hindering PNC's right to payment.[1]  Dkt. No. 27 at 3–7.  Mr. Carr challenges the Court's personal jurisdiction and opposes PNC's motion.  Dkt. Nos. 32, 40.

The Court held a hearing on PNC's motion on July 6, 2021.  Dkt No. 51.  Because the undersigned does not have the authority to resolve a request for injunctive relief, *see* 28 U.S.C. 636(b)(1)(A), the Court directs the Clerk of the Court to reassign this action to a district judge, with the following report and recommendation that PNC's motion for an assignment order and restraining order be granted.

---

[1] PNC originally also requested an order directing Mr. Carr to turn over to PNC the stock purchase agreement, stock certificates and blank stock powers referenced therein, but as explained below PNC has since withdrawn that request.

# REPORT AND RECOMMENDATION

## I. BACKGROUND

On March 23, 2017, PNC obtained a judgment for $26,210,647.04 against Harry Carr in the United States District Court for the Southern District of Ohio. *See PNC Equip. Fin., LLC v. Mariani*, No. 1:14-CV-663, 2017 WL 1102809, at *19 (S.D. Ohio Feb. 8, 2017). PNC registered the judgment in this district on January 16, 2019, Dkt. No. 1, and obtained a writ of execution, Dkt. No. 6. Mr. Carr has not made any payments toward satisfaction of the judgment. Dkt. No. 27-1 ("Decl. of Farah Tabibkhoei") ¶ 6.

On October 13, 2020, PNC examined Michael McDonald, the Chief Financial Officer and Corporate Secretary of Vcinity Inc., a wholly-owned subsidiary of Vcinity Holdings, Inc. ("Vcinity"), a Delaware corporation with its principal place of business in San Jose, California, to determine if Mr. Carr had any assets controlled by Vcinity that Mr. Carr had not previously disclosed to PNC. Dkt. No. 27 at 2; Dkt. No. 27-1 ¶ 4; *see also* Statement of Information for Vcinity Holdings, Inc. (filed September 10, 2018), California Secretary of State, at https://businesssearch.sos.ca.gov/Document/RetrievePDF?Id=04185870-24830950 (last accessed August 16, 2021).

According to Mr. McDonald, Vcinity began employing Mr. Carr in 2018, after acquiring a company where Mr. Carr worked.[2] Dkt. No. 27-1, Ex. 2 at 12:15–25, 13:1–16. During its examination of Mr. McDonald, PNC discovered that Mr. Carr had entered into a stock purchase agreement with Vcinity and signed a promissory note to purchase four million shares of Vcinity common stock at $0.17 per share, or a total of $680,000. Dkt. No. 27-1 ¶ 5; Dkt. No. 27-1, Ex. 3

---

[2] As of June 21, 2021, Mr. Carr is listed as the Chief Executive Officer of Vcinity in the company's California Secretary of State filings. *See* Statement of Information No Change for Vcinity Holdings, Inc. (filed June 21, 2021), California Secretary of State, at https://businesssearch.sos.ca.gov/Document/RetrievePDF?Id=04185870-30784516 (last accessed August 16, 2021). PNC asserts that Mr. Carr "serves as Vcinity Inc.'s Chief Executive Officer," Dkt. No. 36 at 2, but this is inconsistent with the California Secretary of State filings, as well as the Restricted Stock Purchase Agreement, which states that Mr. Carr serves "Vcinity" as its CEO, where "Vcinity" is Vcinity Holdings, Inc. (the "Company"), and Vcinity Inc. is a "subsidiary of the Company." Dkt. No. 27-1, Ex. 3, at 1.

1  ("Restricted Stock Purchase Agreement") at 1.[3]

2  According to Mr. Carr, his spouse, Jennifer Carr, consented to his purchase of the Vcinity shares "as long as the stock certificates are issued and titled to: Harry and Jennifer Carr, as tenants in the entirety." Dkt. No. 32 ¶ 4 (Decl. of Harry Carr); Dkt. No. 32, Ex. 1. Mr. Carr attaches to his declaration a copy of the stock certificate that Mr. McDonald sent to counsel for PNC, bearing the language "Harry and Jennifer Carr, as tenants in the entirety is [*sic*] the owner" of the four million Vcinity shares. Dkt. No. 32 ¶ 5; Dkt. No. 32, Ex. 3.

Mr. Carr's annual salary at Vcinity was $350,000 in 2018, 2019, and 2020. He pays $11,000 a month in alimony and a little over $500 a month in child support. Dkt. No. 27-3 at 12:18–20, 12:21–25, 13:1.

## II.   LEGAL STANDARD

A final judgment for the recovery of money entered by a federal district court may be registered for enforcement in any other federal district court. 28 U.S.C. § 1963. A judgment so registered has the same effect as a judgment of the district court in the district where it is registered, and such judgment may be enforced in the same manner. *Id.* The enforcement of final judgments is governed by Rule 69(a) of the Federal Rules of Civil Procedure, which provides:

> A money judgment is enforced by a writ of execution, unless the court directs otherwise. The procedure on execution—and in proceedings supplementary to and in aid of judgment or execution—must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies.

Fed. R. Civ. P. 69(a).

The parties agree that no federal statute applies here. Therefore, California law regarding enforcement of judgments governs. *See Blue Grass Mfg. Co. of Lexington, Inc. v. Beyond A Blade, Flush-Cut, & Paws Off Tools, LLC*, No. MC 10-80248 WHA (LB), 2011 U.S. Dist. LEXIS 70556, at *3 (N.D. Cal. May 5, 2011) ("[P]ost-judgment enforcement proceedings in this court must comply with California law.") (citing *Credit Suisse v. U.S. Dist. Ct. for Cent. Dist. of Cal.*, 130 F.3d 1342, 1344 (9th Cir. 1997)).

---

[3] The promissory note is not part of the record before the Court.

1     California law provides: "Except as otherwise provided by law, all property of the judgment debtor is subject to enforcement of a money judgment." Cal. C.C.P. § 695.010(a). The statute makes no distinction between out-of-state property and in-state property. A court "may order the judgment debtor to assign to the judgment creditor . . . all or part of a right to payment due or to become due, whether or not that right is conditioned on future developments." Cal. C.C.P. § 708.510(a). Further, "[w]hen an application is made pursuant to § 708.510 or thereafter, the judgment creditor may apply to the court for an order restraining the judgment debtor from assigning or otherwise disposing of the right to payment that is sought to be assigned." Cal. C.C.P. § 708.520. And, where a property or debt is sought to be levied upon, "[i]f a writ of execution is issued, the judgment creditor may apply to the court … for an order directing the judgment debtor to transfer to the levying officer either or both of the following: (1) [p]ossession of the property sought to be levied upon if the property is sought to be levied upon by taking it into custody[, and] (2) [p]ossession of documentary evidence of title to property of or a debt owed to the judgment debtor that is sought to be levied upon." Cal. C.C.P. § 699.040.

### III. DISCUSSION

#### A. Personal Jurisdiction

Mr. Carr argues that this Court does not have personal jurisdiction over him or the stock at issue, and so may not act on PNC's motion. Dkt. No. 31 at 5. He states that he and his wife are domiciled in New Jersey, and that the Vcinity stock, held in a Delaware corporation, does not "exist[]" in California. *Id.*

For purposes of this action, it is sufficient for the Court to have personal jurisdiction over Mr. Carr; it need not have jurisdiction over the stock in question. *Fall v. Eastin*, 214 U.S. 1, 11–12 (1909); *Barber v. Barber*, 51 Cal.2d 244, 247 (Cal. 1958) ("It is well settled in California that a court having jurisdiction of the parties may adjudicate their rights to land located in another state"); *see also Legion for Survival of Freedom, Inc. v. Liberty Lobby, Inc.*, No. D040996, 2003 WL 22922960, at *4, *8 (Cal. Ct. App. Dec. 11, 2003) (affirming lower court's assignment under § 708.510 of out-of-state-property). Moreover, the Court need not have personal jurisdiction over Mr. Carr's spouse, as PNC seeks an assignment of Mr. Carr's rights to payment (and related

4

relief); it disavows any request that would interfere with his spouse's interests in the property at issue. *See* Dkt. No. 27 at 3–5. As PNC has clarified, it does not seek "to force the partition and sale of the Vcinity shares"; rather, PNC only seeks "to obtain the identical rights in the property that Carr currently possesses." Dkt. No. 54 at 5.

PNC invokes this Court's specific jurisdiction over Mr. Carr. Because no federal statute authorizes personal jurisdiction in this matter, California law applies. *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011). "California's long-arm statute, Cal. C.C.P. § 410.10, is coextensive with federal due process requirements, so the jurisdictional analyses under state law and federal due process are the same." *Id.* "For a court to exercise personal jurisdiction over a nonresident defendant consistent with due process, that defendant must have certain minimum contacts with the relevant forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* (internal quotations and citation omitted).

Courts in the Ninth Circuit analyze specific jurisdiction under a three-prong test:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). The plaintiff bears the burden of satisfying the first two prongs. *Mavrix Photo*, 647 F.3d at 1228. If the plaintiff does so, then the burden shifts to the defendant "to set forth a 'compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985)). Where jurisdictional issues are decided "on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand [dismissal]." *Id.* at 1223. Although courts may not assume the truth of allegations in a pleading which are contradicted by affidavit, factual disputes are resolved in the plaintiff's favor. *Id.*

The Court proceeds to consider the question of personal jurisdiction under the three-prong test. First, PNC has shown that Mr. Carr purposefully availed himself of the privilege of conducting activities in California. Since 2018, he has served as CEO of Vcinity, a corporation with its principal place of business in California, which enabled him to obtain the assets that are the subject of PNC's enforcement proceeding. In these circumstances, Mr. Carr could reasonably foresee being haled into a California court. *See In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litig.*, 480 F. Supp. 3d 1050, 1065–1066 (N.D. Cal. 2020) (specific personal jurisdiction existed over CEO of Volkswagen, who had "specifically targeted American investors and capital markets to raise money").

Second, PNC has shown that this action "arises out of or relates" to Mr. Carr's California activities. "To determine whether a plaintiff's claims arise out of the defendant's local conduct, the Ninth Circuit asks whether the defendant's forum-related conduct activities were a "but-for" cause of the plaintiff's claims." *Id.* at 1066 (citing *Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995)). Here, since the entry of judgment in PNC's favor in March 2017, Mr. Carr has obtained significant assets by virtue of his executive role with a California-based company, including his stock in Vcinity, and has not used any of those assets to satisfy his debt to PNC. The object of PNC's enforcement action and its pending motion is Mr. Carr's interest in this Vcinity stock.

The Court is satisfied that the first two prongs of the test for specific jurisdiction are met. The burden now shifts to Mr. Carr "to present a compelling case that the exercise of jurisdiction would not be reasonable." *Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.*, 905 F.3d 597, 607 (9th Cir. 2018) (citation and quotation marks omitted). Mr. Carr has not presented such a case. To evaluate reasonableness, the Court considers seven factors:

> [T]he extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Id.* Here, Mr. Carr has not made any showing on any of these factors, except to remind the Court that "[he] and his spouse have been New Jersey residents and domiciled there continuously for

6

more than twenty years." Dkt. No. 31 at 5.  The Court infers from this statement that Mr. Carr contends it is burdensome for him to defend in this forum.  However, given Mr. Carr's current status as CEO of a California-based corporation, the Court finds that this factor weighs against Mr. Carr.  *Cf. Core-Vent Corp. v. Nobel Industries AB*, 11 F.3d 1482, 1488 (1993) (where burden on the nonresident defendant Swedish doctors was "particularly great because the Swedish doctors have no ongoing connection to or relationship with the United States"); *see also Hungerstation LLC v. Fast Choice LLC*, No. 20-15090, 2021 WL 1697886, at *3 (9th Cir. Apr. 29, 2021) (where the "percipient witnesses [were] located in Saudi Arabia").  In these circumstances, the exercise of personal jurisdiction is not unreasonable.

Accordingly, the Court concludes that it has specific personal jurisdiction over Mr. Carr for purposes of this action.

### B. Assignment of Rights to Payment

When considering whether to issue an assignment order under § 708.510, a court may take into consideration "all relevant factors," including: "(1) [t]he reasonable requirements of the judgment debtor who is a natural person and of persons supported in whole or in part by the judgment debtor"; (2) [p]ayments the judgment debtor is required to make or that are deducted in satisfaction of other judgments and wage assignments, including earnings assignment orders for support"; (3) "[t]he amount remaining due on the money judgment"; and (4) "[t]he amount being or to be received in satisfaction of the right to payment that may be assigned." Cal. C.C.P. § 708.510(c)(1)–(4); *Linley Inv. v. Jamgotchian*, No. 2:11-cv-00724-JAK-(AFMx), 2019 WL 1429507, at *3 (C.D. Cal. 2019).  In addition, although the judgment creditor need not provide "detailed evidentiary support" for its request, it must describe the sources of the right to payment with sufficient detail so that any defendants may file a claim of exemption or other opposition. *Linley Inv.*, 2019 WL 1429507, at *3 (assigning a debtor's right to receive payments from corporations in which the debtor had an ownership interest).

PNC has made the requisite showing for issuance of an assignment order.  First, the relevant factors weigh in favor of assigning Mr. Carr's right to payment from the Vcinity stock to PNC.  Mr. Carr has not presented any evidence about (1) his reasonable requirements or those of

7

his family or (2) payments he is required to make or that are deducted from his wages. Accordingly, the Court looks only to the materials presented by PNC. *See* Dkt. Nos. 27-1, Ex. 1, Ex. 2, Ex. 3. As PNC notes, even though Mr. Carr pays over $11,500 per month in alimony and child support, these payments total less than half of his annual salary of $350,000. *See* Dkt. No. 27-1, Ex. 1, at 133:21–25, 134:11–13. Nothing in the record suggests that Mr. Carr's financial needs, or those of his family, would not be adequately met if the Court assigns his right to payment from the Vcinity stock to PNC. Further, the amount remaining due on the money judgment owed to PNC is over $26.2 million and is easily substantial. *See Linley Inv.*, 2019 WL 1429507, at *4 ($538,154.00 was a "substantial" amount due).

Second, PNC has described the sources of the right to payment in sufficient detail: the evidence before the Court establishes that Mr. Carr has an ownership interest in four million shares of Vcinity stock. *See* Dkt. No. 27-1, Ex. 3 at 1, 13.[4]

Mr. Carr objects to assignment of his interest in Vcinity stock because he says that the stock is "owned by defendant and his spouse as tenants in the entirety," and therefore, the stock is protected under New Jersey law from a judgment creditor's enforcement of a money judgment. Dkt. No. 31 at 2–3, 5–6; Dkt. No. 32, Ex. 1, Ex. 3. PNC responds that California law governs because the Restricted Stock Purchase Agreement specifies that California law applies to construction of the agreement and because the agreement is a "creature[] of California law." Dkt. No. 36 at 4. Further, PNC contends that the stock certificate was issued in Mr. Carr's and his spouse's names as tenants in the entirety as "an artifice of apparently [Mr. Carr's] own direction." *Id.* PNC suggests that the Court should look only to the Restricted Stock Agreement, as to which Mr. Carr is the sole signatory. *Id.*

Mr. Carr appears to be correct that under New Jersey law, "[n]either spouse may sever, alienate, or otherwise affect their interest in the tenancy by entirety during the marriage or upon separation without the written consent of both spouses." N.J. Stat. 46:3–17:4 (1988). However,

---

[4] Mr. Carr asks the Court to strike counsel's declaration on the ground that PNC's own reply brief "impeaches" statements made in the declaration. Dkt. No. 40 at 4–5. It is not clear how such impeachment has occurred, and Mr. Carr does not cite any other basis on which the declaration should be stricken.

8

the Court need not decide whether New Jersey law governs, and if so, whether Mr. Carr may be compelled to assign his interest in the Vcinity stock. During these proceedings, PNC has clarified that it does not seek assignment of the stock; it seeks the assignment of Mr. Carr's *right* to any payments (e.g., in the form of distributions, dividends, or other disbursements) he receives from the stock. *See* Dkt. No. 54 at 5 ("PNC is not seeking to force the partition and sale of the Vcinity shares—PNC is merely seeking an assignment of Carr's interest"). The Court understands that Mr. Carr has received no such payments to date. Nevertheless, § 708.510 contemplates that a court may order a judgment debtor to assign to the judgment creditor "all or part of a right to payment due or to become due, *whether or not the right is conditioned on future developments*." Cal. C.C.P. § 708.510(a) (emphasis added). The statute "accordingly contemplates that an assignment order can be based on contingent rights." *Greenbaum v. Islamic Republic of Iran*, 782 F. Supp. 2d 893, 896 (C.D. Cal. 2008). In essence, an assignment order is "a placeholder" for a judgment creditor, to be used when that creditor seeks to enforce its rights against an obligor. *Id.* at 895. Moreover, such an order does not preclude later challenges to whether those rights were assignable in the first place, *id.*, and it "does not make any property assignable that is not already assignable." Cal. C.C.P. § 708.510, Legislative Committee Comments (1982).

In these circumstances, the Court recommends granting PNC's motion for an order assigning to PNC Mr. Carr's right to receive payments by virtue of his interest in Vcinity stock.

### C.   Restraining Order

A judgment creditor may obtain an order restraining the judgment debtor from assigning or otherwise disposing of the right to payment at issue upon a showing of need for the order. Cal. C.C.P. §§ 708.520(a), (b); *see Blue Grass Mfg. Co. of Lexington, Inc.*, 2011 U.S. Dist. LEXIS 70556, at *11 (finding defendants' failure to make any payments "demonstrate[d] a need to protect the assigned rights to payment from transfer or disposition by Defendants"). The threshold for showing need for a restraining order for this purpose is low. *Linley Inv.*, 2019 WL 1429507, at *4. For example, courts have issued restraining orders when the judgment creditor shows that the judgment debtor has failed to make any payments since the entry of judgment. *Legal Additions LLC v. Kowalski*, No. C-08-2754 EMC, 2011 WL 3156724, at *3 (N.D. Cal. Jul. 26, 2011)

1  (issuing restraining order because debtors failed to make payments after more than six months had
2  passed since entry of judgment); *East Jordan Plastics, Inc. v. Suzhou Xincheng Gardening*
3  *Material Co.*, No. CV 17-5638 VAP(JC), 2018 WL 1806699, at *3 (C.D. Cal. Feb. 13, 2018)
4  (issuing restraining order because debtor failed to make any payments after more than eight
5  months had passed since entry of judgment).

6  Here, Mr. Carr has not made any payments to PNC after more than four years after entry of
7  judgment. Dkt. No. 27-1 ¶ 6; *see PNC Equip. Fin., LLC*, 2017 WL 1102809, at *19 (S.D. Ohio
8  Feb. 8, 2017). Given Mr. Carr's failure to make any payments to PNC in satisfaction of this
9  judgment, it is reasonable to infer that he may dispose of any payments he receives from the
10 Vcinity stock without paying PNC unless he is restrained from doing so. *See East Jordan*
11 *Plastics, Inc.*, 2018 WL 1806699, at *3.

12 Accordingly, the Court recommends granting PNC's motion for a restraining order.

### D. Turnover Order

The relief PNC now seeks is limited to "an assignment and injunction on Carr's ability to further alienate his stock." Dkt. No. 54 at 6. Accordingly, because PNC appears to have withdrawn its original request for a turnover order, the Court recommends against granting such an order.

## IV. CONCLUSION

For the foregoing reasons, because not all parties have consented to magistrate judge jurisdiction, the Court orders as follows:

1. The Clerk of Court shall reassign this matter to the district judge who was the general duty district judge on the date this miscellaneous matter was filed.
2. For the reasons discussed above, the Court recommends that PNC's motion for an assignment order and restraining order be granted.
3. PNC shall personally serve Mr. Carr with this Report and Recommendation and shall file proof of service with the Court.
4. Any party may serve and file objections to this Report and Recommendation within 14 days after being served. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; Civ. L.R. 72-3.

**IT IS SO ORDERED.**

Dated: August 20, 2021

                                                VIRGINIA K. DEMARCHI
United States Magistrate Judge